1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                    )
HOMETASK HANDYMAN SERVICES,        )        No. C07-1282RSL
INC.,                                              )
                                                    )
                          Plaintiff,               )
                                                    )
            v.                                      )
                                                    )        ORDER GRANTING IN PART
PAMELA COOPER,                            )        PLAINTIFF'S MOTION FOR
                                                    )        PRELIMINARY INJUNCTION
                          Defendant.              )
_____)

        This matter comes before the Court on "Plaintiff's Motion for Preliminary

Injunction."  Dkt. # 2.  Plaintiff seeks to enjoin defendant Pamela Cooper from infringing

HomeTask's trademarks and from operating a business in violation of the parties' non-compete

agreement.[1]  In determining whether to grant a preliminary injunction, the Ninth Circuit

considers: (1) the likelihood of plaintiff's success on the merits; (2) the possibility of irreparable

injury to plaintiff if an injunction is not issued; (3) the extent to which the balance of hardships

favors plaintiff; and (4) whether the public interest will be advanced by the injunction.  See

Miller v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994); Los Angeles Mem'l Coliseum

Comm'n v. Nat'l Football League, 634 F.2d 1197, 1201 (9th Cir. 1980).  The analysis is often

compressed into a single continuum where the required showing of merit varies inversely with

the showing of irreparable harm.  See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,

_____

        [1]  Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds that
this matter can be decided on the papers.  Plaintiff's request for oral argument is DENIED.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   204 F.3d 867,874 (9th Cir. 2000).  Thus, plaintiff may be entitled to preliminary relief if it is
2   able to show either (1) probable success on the merits and the possibility of irreparable harm or
3   (2) the existence of serious questions going to the merits and a fair chance of success thereon,
4   with the balance of hardships tipping sharply in favor of an injunction.  Miller, 19 F.3d at 456.

5               With limited exceptions noted below, the underlying facts are not in dispute.
6   Plaintiff HomeTask Handyman Services, Inc. ("HomeTask") is the registered owner of the
7   "HomeTask" mark and sells franchises to persons who want to be in the home handyman
8   business.  Plaintiff and defendant, Pamela Cooper, entered into a franchise agreement on
9   September 27, 2005.  Pursuant to the franchise agreement, Ms. Cooper was required to obtain a
10  business phone number and a vehicle displaying the HomeTask mark.  On June 6, 2007, Ms.
11  Cooper notified HomeTask that she was "rescinding" the franchise agreement.  By return letter,
12  HomeTask confirmed Ms. Cooper's termination and reminded her of her contractual obligations
13  upon termination, including the cessation of all use of the HomeTask mark and a covenant not to
14  compete.  Complaint, Exhibit F.

15              On August 16, 2007, plaintiff filed its complaint against Ms. Cooper, asserting
16  claims for trademark infringement, false designation and misrepresentation of origin, trademark
17  dilution, and breach of contract.[2]  Together with the complaint, HomeTask filed this motion for a
18  preliminary injunction, asking that defendant be enjoined from (1) making any further use of
19  HomeTask's name or trademarks, including the use of the yellow van, a phone number, and
20  advertisements formerly associated with Ms. Cooper's HomeTask franchise and (2) operating a
21  competing home repair business within 100 miles of the former franchised territory for a period
22  of two years.

23

24

---

25      [2]  On the same day, HomeTask filed a similar complaint against another former franchisee, Paul
26  Szewczyk.  That case was assigned to the Honorable Ricardo S. Martinez, who heard oral argument and
    issued his decision on October 16, 2007.  The Court has reviewed and agrees with Judge Martinez'
27  decision in C07-1282RSM but writes separately to address the slightly different fact pattern presented
    here.

28
    ORDER GRANTING IN PART PLAINTIFF'S
    MOTION FOR PRELIMINARY INJUNCTION          -2-

### A.  Trademark Infringement

Plaintiff alleges that Ms. Cooper has infringed and continues to infringe its registered trademark by (a) using the same telephone number that she used while operating her HomeTask franchise, (b) using a van painted the same color as the vans used by HomeTask franchisees, and (c) using the HomeTask mark in two internet directories.  HomeTask asserts that these activities create a likelihood of confusion as to origin in violation of § 43(a) of the Lanham Act.  Defendant argues that her use of the phone number and van cannot give rise to a trademark violation because HomeTask has no protectable interest in either the yellow color of the van or the phone number.  Defendant also maintains that she contacted all marketing channels over which she had control and informed them of her change from HomeTask to Handy Home Services.

A claim of false designation of origin under § 43(a) applies to both registered and unregistered marks:  plaintiff's admission that it does not have a registered trademark in yellow vans or Ms. Cooper's phone number is therefore not fatal.  Plaintiff must, however, establish that the claimed mark is valid.  Comedy III Products v. New Line Cinema, 200 F.3d 593, 594 (9th Cir. 2000).  To be a valid, legally-protectable mark, an image must be "distinctive," meaning that it is capable of distinguishing the holder's goods from the goods of others.  Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 210-11 (2000); eAcceleration Corp. v. Trend Micro, Inc., 408 F. Supp.2d 1110, 1115 (W.D. Wash. 2006) (citing Kendall-Jackson Winery v. E. & J. Gallo Winery, 150 F. 3d 1042, 1047 (9th Cir. 1998)).  A color, standing alone, can never be inherently distinctive (Wal-Mart Stores, 529 U.S. at 211-212), although it may acquire secondary meaning if, over time, customers come to view a particular color as signifying a particular brand.  There is no evidence from which one could conclude that yellow, even a specially-blended yellow, has acquired a secondary meaning:  defendant has identified other similar businesses that use yellow vehicles and plaintiff has not shown that yellow vans are distinctly associated with HomeTask in the minds of consumers.

As to Ms. Cooper's phone number, plaintiff asserts that trademark protection

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION        -3-

1  exists because the phone number was used in conjunction with the HomeTask franchise, creating

2  the potential for confusion.  Defendant acknowledges that she uses the same phone number for

3  her Handy Home Services business as she used when she was a HomeTask franchisee, but

4  points out that the number is generic, with no inherent meaning or identifying features.  For

5  Lanham Act purposes, the number has nothing to do with HomeTask:  it is not the company's

6  general number, nor is it in any way tied to the company, its services, or its mark.

7       The Court finds that a consumer seeing Ms. Cooper's phone number on the side of

8  a yellow van would not necessarily think of HomeTask or be confused as to the origin of the

9  services offered.  Plaintiff has therefore failed to show that the color of the van or the phone

10  number is protected under the Lanham Act or that defendant has infringed the HomeTask mark.

11       Although defendant is apparently willing to concede that the mark "HomeTask" is

12  distinctive such that its unlicensed use could cause consumer confusion, defendant has raised a

13  factual dispute regarding whether she has continued to use the HomeTask mark on the internet.

14  Plaintiff has provided two internet screens on which Ms. Cooper's name is associated with

15  HomeTask.  Affidavit of Jerrod Sessler (dated Aug. 14, 2007), Ex. B.  Both screens reflect some

16  sort of internet directory.  Neither the date the searches were performed nor the date the

17  information was posted is provided.  Ms. Cooper states that, after the franchise agreement was

18  terminated, she changed her contact information in all of the marketing channels she had been

19  using.  How and when the internet directories acquired her information cannot be discerned from

20  the record.  If, as is likely the case, the offending entries were created while the franchise

21  agreement was in effect and/or without Ms. Cooper's direct input or involvement, it would be

22  difficult to conclude that she used or otherwise infringed plaintiff's mark.

23       HomeTask has failed to demonstrate a likelihood of success on the merits of its

24  false designation claim.  Because a fair chance of success on the merits is an "irreducible

25  minimum" for a preliminary injunction (Johnson v. Cal. State Bd. of Accountancy, 72 F.3d

26  1427, 1430 (9th Cir. 1995)), plaintiffs' motion for a preliminary injunction as to its false

27  designation claim is DENIED.

28

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION        -4-

**B.  Breach of the Contractual Covenant Not to Compete**

Section 9.1(a) of the franchise agreement provides that for two years after termination of the agreement, a former franchisee may not:

> [p]articipate directly or indirectly or serve in any capacity in any business engaged in the sale of services or products the same as, similar to, or competitive with those offered by the franchised business.  This covenant not to compete applies: (i) . . . after termination within a one hundred (100) mile radius from the boundary of your territory, and from any franchised, Franchisor-owned or affiliated company-owned premises; (ii) on the Internet; and (iii) on any other Multi-Area Marketing channels used by us[.]

Complaint, Exhibit A at 32.

Restrictive covenants in employment contracts are enforceable in Washington as long as the restrictions are "not greater than are reasonably necessary to protect the business or good will of the employer, even though they restrain the employee of his liberty to engage in a certain occupation or business, and deprive the public of the services, or restrain trade." Alexander & Alexander, Inc. v. Wohlman, 19 Wn. App. 670, 686 (1978) (*citing* Racine v. Bender, 141 Wn. 606 (1927)).  In evaluating the reasonableness of the restrictions, courts consider three factors: "(1) whether restraint is necessary for the protection of the business or goodwill of the employer; (2) whether it imposes upon the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill; and (3) whether the degree of injury to the public is such loss of the service and skill of the employee as to warrant nonenforcement of the covenant."  Perry v. Moran, 109 Wn.2d 691, 698 (1987) (*modified in other respects by* Perry v. Moran, 111 Wn.2d 885 (1989)).  The reasonableness of the covenant is a conclusion of law.  Alexander, 19 Wn. App. at 684.   In Washington, non-competition covenants in the franchise setting are evaluated under the same standards as covenants in the employment context.  Armstrong v. Taco Time Int'l, 30 Wn. App. 538, 543 (1981).  Where necessary to ensure reasonableness, the court may alter or modify the covenant before enforcing it.  Armstrong, 30 Wn. App. at 543.

HomeTask asserts that the restrictive covenant set forth above is reasonable and

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          -5-

necessary to protect its goodwill, its interest in avoiding unfair competition, and the franchise system it has developed.  Motion at 11-19.  Although plaintiff contends that the scope of the covenant is reasonable, it does not seek to enforce the covenant to its full extent.  HomeTask seeks to prohibit Ms. Cooper from conducting a home-repair business "within 100 miles of her formerly licensed territory"(Motion at 19) and is apparently willing to allow her to operate near other HomeTask franchises and to engage in related, but not identical, businesses.  Defendant refuses to acknowledge plaintiff's concessions and argues that the covenant as written is overbroad in that it would preclude defendant from engaging in any home renovation-related business from northern California to Vancouver, British Columbia.  Defendant also argues (1) that the non-compete is void because the franchise agreement violates the Washington Franchise Investment Protection Act and/or (2) that the relief requested should be denied because this dispute is subject to arbitration pursuant to Section 8.3 of the franchise agreement.

Plaintiff has established that it has a legitimate interest in avoiding competition with Ms. Cooper's new business.  Allowing Ms. Cooper to exploit the company's good will and her former customer base would place HomeTask at a distinct disadvantage in attempting to re-franchise the area or otherwise recapture the market.  Ms. Cooper should, therefore, be precluded from operating a home repair business within the territory HomeTask had assigned her plus a 25 mile buffer area, despite the restraint such a restriction places on Ms. Cooper and the loss of services available to the public in and around Sammamish.  As to the area described, HomeTask has demonstrated both a likelihood of success on the merits and the possibility of irreparable harm.  Plaintiff's demand for a 100 mile buffer zone is unreasonable, however, and would not further any of plaintiff's legitimate interests.  To the extent HomeTask and Handy Home Services compete for business in Bellingham or Chehalis, it is difficult to imagine how Ms. Cooper's former association with HomeTask in Sammamish would give her an unfair advantage:  the playing field in these remote locations would be presumptively even. The Court

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION        -6-

will modify the covenant not to compete accordingly.[3]

Whether plaintiff has violated Section 8.3 of the franchise agreement has not been adequately briefed:  defendant makes only a passing reference to the fact that no arbitration occurred before this suit was filed.  Response at 5.  Nor can the Court determine whether a violation of the Franchise Investment Protection Act occurred or whether such violation renders the non-compete unenforceable.  Based on the existing record, it appears likely that plaintiff will succeed on the merits of its non-compete claim notwithstanding the fact that certain defenses may exist.

For all of the foregoing reasons, plaintiff has failed to establish a likelihood of success on the merits of its false designation claim and the motion to preliminarily enjoin defendant's use of her van and phone number is denied.  Plaintiff has, however, demonstrated a likelihood of success on claims arising out of the covenant not to compete.  The Court also finds that there is a possibility of serious injury to plaintiff's goodwill if an injunction does not issue.  Although the scope of the restrictive covenant, as written, is unreasonable both as to geography and the vague restrictions set forth in Section 9.1(a)(ii) and (iii), the Court hereby modifies the covenant to preclude defendant from operating a home repair business within 25 miles of her former territory.  The motion for a preliminary injunction is therefore GRANTED in part.  Bond is hereby set in the amount of $10,000 pursuant to Fed. R. Civ. P. 65(c).

---

[3]  In its motion for preliminary injunction, the only contractual argument asserted by HomeTask as a basis for an injunction is the covenant not to compete set forth in Section 9.1(a) of the franchise agreement.  Motion at 9-20.  Although plaintiff mentions other post-termination obligations, they are discussed only in the context of the trademark infringement claim (Motion at 9).  Other contractual provisions, such as Section 7.6(b) which requires the assignment of telephone numbers used in the business, are not set forth or analyzed until the reply memorandum.  This tactic effectively deprived defendant of an opportunity to respond to a contract claim regarding her phone number.  The Court has not, therefore, considered whether plaintiff is likely to succeed on its claims for other forms of contractual relief, such as the return of the Operations Manual or the transfer of defendant's phone number.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          -7-

1

Dated this 29th day of October, 2007.

2

3

4
Robert S. Lasnik

5
United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION          -8-